548 So.2d 1320 (1989)
Steve FULGHAM
v.
Mary Emma SNELL, Marcus Edward Skipper, and Susan Kay Skipper.
No. 07-CA-58647.
Supreme Court of Mississippi.
September 13, 1989.
G. Jyles Eaves, Eaves & Eaves, Louisville, for appellant.
Thomas L. Kesler, Sams Kesler & Hudson, Columbus, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Steve Fulgham filed suit in the Circuit Court of Lowndes County, Mississippi, *1321 against Marcus Skipper, Susan Skipper, his wife, and Mary Emma Snell for actual and punitive damages, charging that his damages resulted from the kidnapping of his minor child, Christopher Joe Fulgham, by the Skippers and Snell. Default judgment was entered against Mary Emma Snell and Fulgham was awarded $150,000 against her. The action against the Skippers was dismissed under MRCP 13(a) on the ground that Fulgham's action should have been brought on a compulsory counterclaim in an earlier suit wherein the Skippers sought to terminate Fulgham's parental rights to Christopher Joe Fulgham and to adopt the child. Fulgham has appealed from that judgment.

Facts
Appellant is the father of Christopher Joe Fulgham, a minor child. The child's mother died in a trailer fire in Lowndes County, Mississippi, in 1980 and the child was left with the appellant. Mary Emma Snell, a maternal grandparent of the child, requested appellant to permit the child to visit her in Columbus, Mississippi, and the request was granted. However, Mary Emma Snell refused to return the child, claiming that appellant had been physically abusing him. Appellant instituted a habeas corpus suit in the Chancery Court of Lowndes County for custody of his child. Without the knowledge or consent of appellant, and while the habeas suit was pending, Snell notified Marcus E. Skipper, maternal grandfather and her former husband, to come to Mississippi and take the child to Arizona. Skipper and his present wife, Susan Skipper, moved the child to Arizona without the knowledge or consent of appellant. In Arizona, they instituted adoption proceedings and, apparently, perpetrating a fraud upon the Arizona Court, adopted the child, again without the knowledge or consent of appellant.[1]
Appellant discovered the adoption in Arizona and filed an action to set it aside. The Arizona court granted the relief asked, placed the child in the custody of a juvenile agency, stayed further proceedings in Arizona, and directed the Skippers to commence termination of parental rights and adoption proceedings in Mississippi.
The Skippers filed suit on August 19, 1987, in the Chancery Court of Webster County, to terminate appellant's parental rights, which action was transferred to Choctaw County. The Skippers contended that appellant had abandoned the child. The chancery court entered a final decree in favor of appellant and dismissed the Skippers' suit.
The Skippers appealed the chancery court judgment to this Court.[2] Following appeal, appellant filed suit in the Circuit Court of Lowndes County, Mississippi, against Snell and the Skippers for actual and punitive damages. The lower court dismissed the action against the Skippers on the ground that appellant was barred from asserting a claim under MRCP 13(a), which required him to file a compulsory counterclaim in the termination proceeding in the Chancery Court of Choctaw County. As stated, default judgment was entered against Mary Emma Snell in the sum of $150,000, the court finding that Mary Emma Snell had kidnapped Christopher Joe and that her actions in taking the child by trickery and intentional deceit were so "wanton, fradulent [sic] and willful [that] the Plaintiff, STEVE FULGHAM, should be awarded punitive damages."

Law
The sole issue on this appeal is whether or not the lower court erred in dismissing *1322 the suit against Marcus Edward Skipper and Susan Skipper under MRCP 13(a).
The Skippers' motion in the trial court asserted that the action should be dismissed because it was a compulsory counterclaim which should have been stated in the prior action between the Skippers and Fulgham. They contended that the counterclaim was compulsory because there was a logical relation between the claim and the counterclaim. MRCP 13(a), under which the dismissal was granted, follows:
(a) Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. But the pleader need not state the claim if:
(1) At the time the action was commenced the claim was the subject of another pending action; or
(2) The opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim and the pleader is not stating any counterclaim under this Rule 13; or
(3) The opposing party's claim is one which an insurer is defending.
The Comment to MRCP 13(a) follows:
The purpose of Rule 13 is to grant the court broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit and to eliminate the inordinate expense occasioned by circuit of action and multiple litigation:
It is, and should be, a paramount concern of the judiciary to prevent multiple suits where one suit will suffice. There is a tendency, perhaps, to forget that one who undergoes the rigors of an action, with all of its traumatic impact, loss of time, delay, substantial expense and disruption of his affairs, with consequent appeals and possible retrials and still other appeals, should be spared having to do this more often than is strictly necessary. Even the successful party after bearing the expense of one trial and of one appeal is, in many instances, hardly a winner. Magee v. Griffin, 345 So.2d 1027, 1032 (Miss. 1977).
In arriving at a determination of whether or not the suit for damages arose from the same transaction or occurrence on which the previous action for termination of parental rights arose, we note that appellant's "cross-complaint" in the termination action alleged that the Skippers kidnapped Christopher Joe just as the complaint in the suit sub judice for damages alleges kidnapping and hiding the child. In the former proceedings, the appellant sought (1) custody of the child; (2) an order enjoining the Skippers from interfering with his custodial rights; and (3) reasonable attorney's fees and costs of court from the Skippers "because of Plaintiffs' and Cross-Defendants' wrongful, intentional, unconsciousable [sic] and illegal acts in taking said child from his natural father." Appellant's counsel concedes that MRCP 13(a) should be strictly followed where practical and his only argument that it would not have been practical was that the present action was one at law which should not be tried in chancery court along with equitable action.
The chancery court has the discretion (1) to empanel a jury to decide factual issues, MCA § 11-5-3 (1972), Deposit Guaranty National Bank v. Cotten, 420 So.2d 242 (Miss. 1982); and (2) to award punitive damages in a proper case. Whittington v. Whittington, 535 So.2d 573, 580 (Miss. 1988); Central Bank of Mississippi v. Butler, 517 So.2d 507, 512 (Miss. 1987); Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454 (Miss. 1983).
In deciding whether or not the suit sub judice arose from the same transaction or occurrence on which the previous termination action was based, we consider the following tests:
(1) Whether the same evidence or witnesses are relevant to both claims;

*1323 (2) Whether the issues of law and fact in the counterclaim are largely the same as those in the plaintiff's claim;
(3) Whether, if the counterclaim were asserted in a later lawsuit, it would be barred by res judicata;
(4) Whether or not both claims are based on a "common nucleus of operative fact."
Robertson, "Joinder of Claims & Parties  Rule 13, 14, 17 and 18." 52 Miss.L.J. 47, 48-63 (1982).
Two of the three defendants in the action sub judice were involved in the former termination action. Mary Emma Snell resided in Mississippi and the court could have obtained jurisdiction over her, making her a party to the counterclaim. We are of the opinion that there was a logical relationship between the original action for termination of parental rights and the action sub judice for damages and that appellant forfeited his claim by not asserting it as a counterclaim in the original action. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] Susan Skipper received a letter from appellant's attorney advising the Skippers that a Mississippi court order had issued regarding the child's custody and requesting the Skippers to return the child to his father in Mississippi. Using a false name, Sue Skipper returned the letter saying it had been opened by mistake. In the Arizona court proceedings involving the Skippers' petition to adopt Christopher Joe, the adoption petition alleged that copies of the pleadings had been sent to Steve Fulgham's last known address and that the Skippers had attempted to locate him through Mary Emma Snell. Pleadings had actually been sent to Steve Fulgham at the address of Mary Emma Snell.
[2] The Mississippi Supreme Court affirmed the lower court in Skipper v. Fulgham, 511 So.2d 933 (Miss. 1987).